IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, | : | CIVIL ACTION |
| TRUSTEE, AS SUCCESSOR, IN INTEREST | : | |
| TO BANK OF AMERICA, NATIONAL | : | |
| ASSOCIATION, AS SUCCESSOR BY | : | NO. 14-2333 |
| MERGER TO LASALLE BANK NATIONAL | : | |
| ASSOCIATION, AS TRUSTEE FOR BEAR | : | |
| STEARNS COMMERCIAL MORTGAGE | : | |
| SECURITIES INC., COMMERCIAL | : | |
| MORTGAGE PASS-THROUGH | : | |
| CERTIFICATES, SERIES 2007-TOP26, | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | |
| | : | |
| 815 LIMITED PARTNERSHIP, | : | |
|     Defendant. | : | |

## ORDER APPOINTING RECEIVER

This matter is before the Court on the Petition for Appointment of Receiver filed by the U.S. Bank National Association, Trustee, as successor in interest to Bank of America, National Association, as successor by merger to LaSalle Bank National Association, as Trustee for Bear Stearns CommercialMortgage Securities Inc., CommercialMortgage Pass-Through Certificates, Series 2007-TOP26 ("Plaintiff" or "Holder") to operate and manage the real and personal property located at 815 N Pottstown Pike, Exton, PA 19341 as more fully described in Exhibit "C" to the Complaint (the "Property" or "Mortgaged Premises").

IT IS HEREBY ORDERED AND DECREED AS FOLLOWS:

1. Hospitality Receiver, LLC, (hereinafter the "Receiver") is hereby appointed as receiver to manage, operate and preserve the Mortgaged Premises located at 815 N Pottstown

Pike, Exton, PA 19341, known as the Wyndham Exton hotel, together with all of the rents, revenues, income and profits from the Mortgaged Premises.

       2.       The Receiver shall immediately enter upon, receive and take complete possession of all the Mortgaged Premises and the rents, revenues, income and profits generated by, from or at the Mortgaged Premises.

       3.       The Defendant and its general and limited partners, stockholders, officers, directors, representatives, servants, contractors, agents, managers and employees (collectively, the "Related Parties") are hereby ordered to deliver, or to cause to be delivered, immediately to the Receiver all of Defendant's property and effects in any way pertaining or relating to the Mortgaged Premises and its approvals, operation, construction, maintenance, and rentals, including, without limitation, all governmental approvals, certificates of occupancy, surveys, plans, drawings, specifications, engineering reports, environmental reports, construction contracts and documents, work reports, advertising materials, forms, deposits, deposit account records, operating account records, other banking or financial records, contracts of sale and/or options to purchase, sales lists, service contracts, warranties, leases, lease agreements, security deposits, rent rolls and rental lists, guest lists, and all other miscellaneous contracts, documents and instruments relating in any way to the Mortgaged Premises and shall turnover all such bank accounts relating in any way to the Mortgaged Premises, and further are restrained until further Order of this Court from taking any action to interfere with the Receiver in discharging its duties hereby, or with any of the property to be delivered to the Receiver pursuant to the Order. The Receiver shall provide the Defendant reasonable access to the Defendant's books and records to the extent necessary for the Defendant to prepare financial reports, tax returns and other filings

required by local, state or federal government units, such access to be granted on no fewer than five (5) business days advance written request to the Receiver and at time and places reasonably selected by the Receiver.

      4.      Defendant and its Related Parties are ordered to surrender and deliver immediately to the Receiver all keys or combinations to locks to open or gain access to all parts of the Mortgaged Premises and all cash or cash equivalents wherever located, including cash or cash equivalents held by any banks or financial institutions, arising from the operation of or income from the Mortgaged Premises, including, without limitation, all payments made under any contracts or leases including, but not limited to, any and all security deposits and any deposits of potential tenants and customers. The Defendant and its Related Parties are hereby ordered to turn over, deliver, or to cause to be delivered, immediately to the Receiver all bank accounts that are in any way related to the Mortgaged Premises. Defendant is restrained until further Order of this Court from taking any action to interfere with the Receiver in discharging its duties hereby. In its discretion, Receiver is authorized to withdraw funds and close any or all bank accounts in any way related to the Mortgaged Premises.

      5.      Defendant and its Related Parties are further ordered to surrender and deliver immediately to the Receiver originals or true and correct copies of all policies of insurance covering the Mortgaged Premises, including, without limitation, policies that provide hazard and/or liability coverage and shall not perform any act which will limit or decrease the existing coverage. The Receiver, in its sole discretion, may obtain property, casualty, general liability, workers compensation and liquor liability insurance on the Property and name Plaintiff and Defendant as additional insured and may terminate all existing insurance policies. Any refund of

policy premiums that result from the policy termination shall be turned over to the Receiver by Defendant. The Receiver is empowered to immediately notify all insurers to name the Receiver (as the court-appointed receiver for the Mortgaged Premises) as loss payee on any insurance policy covering the Mortgaged Premises, to collect any payments on losses covered by such insurance policies, and to restore or repair the Mortgaged Premises in response to any such loss.

6. The Receiver is empowered to continue the operations of, development and maintenance at the Mortgaged Premises as set forth herein including, if required, the execution of new leases and contracts, the extension, renegotiation, modification or amendment of existing leases and contracts and exercising all powers necessary to facilitate the operation of the Mortgaged Premises. The Receiver shall operate all business on the Property under the authority of any existing leases, contracts, permits and licenses, including the Liquor License (as defined in paragraph 17 herein), whether in the name of Defendant or its partners, officers, directors, representatives, servants, contractors, agents, employees or management company and is authorized to hire directly or indirectly current or former employees of Defendant or its affiliates, contractors, or management company as may be required to operate the Property.

7. The Receiver shall enter, possess, operate and control the Mortgaged Premises and shall have the power to conduct, either personally or through its employees, servants and agents, the business thereof, namely, the operation of the Mortgaged Premises and the leasing and/or renting of facilities therein. In the discharge of its duties hereunder, the Receiver is authorized to employ such firms and persons as are deemed necessary to assist the Receiver in the performance of its duties hereunder including, but not limited to, attorneys, accountants, managing agents, maintenance personnel, security personnel, leasing agents, broker or

management firms, and to pay such individuals and companies reasonable compensation for their assistance in amounts and at intervals approved by the Court. Any attorney or law firm retained by Receiver must be an independent third person and/or third party entity having no affiliation to Receiver.

8. The Receiver is empowered, in the exercise of its business judgment, to terminate any and all leases and contracts Defendant may have with any tenants and customers or with any managers, brokers or other agents with respect to the Mortgaged Premises.

9. Defendant and its Related Parties are directed to remit to the Receiver any and all payments, rents, revenues, income and profits paid to Defendant and their partners, stockholders, officers, directors, representatives, servants contractors, agents and employees or affiliates of Defendant on or after the date of this Order and any deposits in Defendant's possession and control, whether collected before or after the date of this Order.

10. The Receiver shall collect and receive all payments, revenues, rents, income and profits arising from the Mortgaged Premises and deposit same as set forth in paragraph 13 hereof.

11. The Receiver is authorized and empowered to use the funds derived from the Mortgaged Premises to pay, in cash or with credit, the following expenses incurred in connection with its management of the Mortgaged Premises at its discretion without further Order of this Court:

(a) All current and actual operating expenses incurred in connection with operating the Mortgaged Premises and in the accomplishment of the powers herein granted. Operating expenses shall include, without limitation, the costs of electricity, sewage, water, and

garbage collection; charges by other utilities; needed maintenance; upkeep and repair; security; site staff; the Receiver's reasonable out-of-pocket expenses, including but not limited to travel time and expenses, if any, such travel time and expenses to be incurred in conformity with Exhibit "1"hereto, Receiver's fees, management fees along with all other professional services fees and expenses, and any other items of expense or costs necessary to operate the Mortgaged Premises; however, the Receiver must obtain Plaintiff's written approval for any such costs exceeding $5,000.00;

   (b) Payment of taxes to ensure the continued operation of the Mortgaged Premises and to protect the liens of the Plaintiff in the Mortgaged Premises; and

   (c) Payment of insurance premiums for hazard, casualty and liability insurance coverage to keep the Mortgaged Premises, the Receiver and Plaintiff insured.

  12. The Receiver is empowered to institute actions against tenants and customers of Defendant for the recovery of rent, income and profit relating to the Mortgaged Premises and to advise prospective tenants who have signed leases and customers that have signed contracts, but who have not closed on such leases or contract and who have tendered deposits to Defendant with respect to such leases and contracts, that neither the Receiver nor the Plaintiff will refund such deposits; however the Receiver shall be authorized to refund any deposits tendered to it by Defendant.

  13. The Receiver shall open and maintain deposit accounts at a federally insured bank or financial institution approved by the Plaintiff for the purpose of depositing therein all proceeds and income collected from the Mortgaged Premises and to withdraw such funds as are necessary to pay for the costs incurred in the operation and maintenance of the Mortgaged Premises in

accordance with this Order. The Receiver shall have the authority to obtain and maintain possession of any and all of Defendant's bank accounts, investment accounts, safe deposit boxes, special accounts, petty cash or other depository accounts, lock box accounts or accounts of any nature whatsoever made by or for the benefit of Defendant with any bank, savings and loan association, depository or financial institution without further order of this Court. Receiver also shall have the authority to withdraw funds from such accounts without further order of this Court.

14. Receiver shall turn over to Plaintiff any funds remaining in its account at the end of each month in excess of the amount necessary to pay the costs of operation and maintenance identified in this Order and in excess of the amount of working capital necessary for the operation and maintenance of the Property as determined by the Receiver. Plaintiff shall apply such funds to reduce the indebtedness owed to it by Defendant

15. Receiver may communicate, negotiate or otherwise deal with the Property's franchisor regarding compliance with or cure of any possible defaults relating to license renewals or license agreements.

16. The Receiver is empowered to advertise the Mortgaged Premises and the Defendant's businesses related thereto, in whole or in part, and attempt to locate customers for the Mortgaged Premises, in whole or in part, upon terms and conditions usual and customary for the market.

17. The Receiver is empowered to operate the existing liquor license, Permit No. H5698 issued to Haverford Hotel Partners, Inc. (the "Liquor License") related to the Mortgaged Premises and to promptly make application, if the Receiver deems such application necessary or

preferable, to the Pennsylvania Liquor Control Board to obtain an amended or new liquor license to sell alcoholic beverages as an incident to the operation of the Mortgaged Premises.

18. The Receiver shall be at liberty to apply to this Court at any time during the pending action for further direction and guidance to assist the Receiver in it managerial role.

19. Neither Plaintiff nor the Receiver shall be liable for any obligation of Defendant relating to the Mortgaged Premises that arose prior to this Order, including, without limitation, any contingent or unliquidated obligations, nor shall Plaintiff or the Receiver be obligated to advance any funds to pay any expense of maintenance or other liability of the Mortgaged Premises. Notwithstanding the foregoing, should Plaintiff decide, in its discretion to advance funds, to maintain or preserve the Mortgaged Premises, the repayment of all such funds advanced shall be secured by the Mortgage, shall be added to any judgment entered in this action and shall be payable thereunder. Receiver shall not be obligated to contribute personal funds in the performance of its duties hereunder. In the event there are not sufficient funds available to Receiver from operations or as provided by Plaintiff, the Receiver shall have the right to apply to the Court for a termination of the receivership.

20. The Receiver shall have no liability to any party for any claims, actions or causes of action arising out of or relating to events or circumstances occurring prior to the appointment of the Receiver. This protection of the Receiver from liability shall include, but not be limited to, any liability from the performance of services rendered by third parties on behalf of Defendant, and any liability to which Defendant is currently or may ultimately be exposed under any applicable laws pertaining to the ownership and use of the Mortgaged Premises and operation of the Defendant's businesses.

21. Following the Receiver's appointment, the Receiver shall not be deemed in any way to be an owner of the Mortgaged Premises. If the Receiver shall have acted in accordance with the terms and conditions of this Order, the Receiver shall have no liability as to any claim, actions or causes of action of any third parties who have or would have claims against the owner of the Mortgaged Premises or any officer, director or partner thereof, including, without limitation, any claims under any federal or state environmental law; provided however, the Receiver shall be liable for: breach of any contract entered into by Receiver; the Receiver's own gross negligence, intentional or willful misconduct; or material actions taken by the Receiver that are not authorized by the terms of this Order. Receiver shall only be liable to the extent of the assets of the receivership estate.

22. The Receiver shall provide to Plaintiff and Defendant on a monthly basis and shall simultaneous therewith file with the Court written reports setting forth, among other things, the gross income from the operation of the Mortgaged Premises and the expenditures made by the Receiver in connection with its duties and obligations hereunder. The Receiver shall respond in a timely fashion to reasonable requests by the Plaintiff or Defendant for information regarding the operation of the Mortgaged Premises.

23. The Receiver shall have no rights other than as expressly set forth in this Order and shall have no right to commence any action against the Plaintiff or Defendant, or their respective officers, directors, shareholders, employees, attorneys, partners or affiliates, provided however, not withstanding the foregoing, the Receiver may commence an action to the extent the Receiver deems such action necessary to enforce the terms of this Order or to protect the Mortgaged Premises or any other property under the control of the Receiver.

24. Upon the occurrence of the earliest of (i) a conveyance of Defendant's interest in the Mortgaged Premises following a foreclosure sale, (ii) notification from the Plaintiff to the Court that the issues between the Plaintiff and Defendant have been amicably resolved and that the services of a Receiver are no longer required, or (iii) the Receiver or his successor, if any, is otherwise relieved of his duties by further order of the Court, Receiver shall pay all final bills, and issue a final report within thirty (30) days. Unless otherwise ordered by the Court, this Order shall remain in effect until, and the Receiver shall be discharged upon the filing of the Receiver's final report.

25. Within sixty (60) days of entry of this Order, the Receiver shall file a report setting forth the property of the Defendant subject to the receivership, the interest in and claims against such property, the income-producing capacity of such property and recommendations as to the best method of realizing its value for the benefit of those entitled.

26. The Receiver shall post a bond of $25,000.00 within ten days of the date of entry of this Order.

27. The Receiver shall be compensated for his services hereunder consistent with the fee schedule attached hereto and marked as Exhibit "1" to this Order.

IT IS SO **ORDERED** this 24th day of September, 2014.

BY THE COURT:

_S/ *Ronald L. Buckwalter*_
RONALD L. BUCKWALTER, S. J.

# **EXHIBIT 1 TO RECEIVERSHIP ORDER**

## FEE SCHEDULE

**Management Services:**
Management services would be billed at a rate of 2.75% of gross hotel monthly revenue or $4,500, whichever is greater.

**Receivership Services:**
Receiver Fees will be billed at (Two Hundred and Twenty-Five) $225.00 per hour
We also propose capping our Receiver Fees to enable to anticipate and forecast expenses accurately.
We propose a tiered reduction as follows:
Month One — Total Receiver Fees not to exceed $1,000
Month Two — Total Receiver Fees not to exceed $500
Month Three until end of Receivership — Receiver Fees not to exceed $350

**Travel Time; Travel Expenses** Travel time, if any, will be billed at (Fifty Percent) 50% of the Receivership Fee rate above. Unless required by the court the receiver will utilize Prism Hospitality, LP management staff for all travel to the hotel and travel will be booked no less than 14 days in advance expect in the event of an emergency.
All actual out of pocket, travel expenses and attorney's fees would be billed to the Receiver Estate.

**Accounting Services:**
To enhance reporting and direct control of the hotel's finances, we will provide centralized accounting services at One Thousand Dollars ($1,000) per month.
Accounting Services includes:
Monthly financial reporting
Cash management
Processing of accounts payable
Processing of accounts receivable
Banking and bank statement reconciliation
Calculation and payment of all operational taxes
Annual Budgeting
Monthly Forecasting